UNITED STATES DISTRICT COURT

Northern District of California

ACS RECOVERY SERVICES,

         Plaintiff,

  v.

ESTHER G. KAPLAN,

         Defendant.
_____/

No. C 09-01304 JSW (MEJ)

**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT [DKT. #19]**

## I. INTRODUCTION

Pending before the Court is Plaintiff ACS Recovery Services, Inc.'s Motion for Default Judgment. (Dkt. #19.) Defendant Esther G. Kaplan has not filed an Opposition or otherwise appeared in this lawsuit. On August 4, 2009, the Honorable Jeffrey S. White, the presiding judge in this matter, issued an order referring the pending Motion to the undersigned for preparation of a report and recommendation. (Dkt. #22.) On September 22, 2009, the undersigned held a hearing on Plaintiff's Motion. Following the hearing, the Court requested supplemental briefing from Plaintiff on certain issues. In response, Plaintiff filed its Supplemental Brief (Dkt. #32), and its Second Supplemental Brief (Dkt. #34). After consideration of Plaintiff's Complaint, Motion, and supporting materials, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Default Judgment.

## II. BACKGROUND

Plaintiff initiated this action by filing a Complaint against Defendant on March 25, 2009. (Dkt. #1) The relevant allegations are as follows.

Defendant was a beneficiary under a health insurance policy (the "Policy") written by Great West Healthcare. (Compl. ¶8; Dkt. #30, Declaration of H. Troy Romero, Ex. A.) The Policy is

governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Compl. ¶4.) Pursuant to the Policy, Defendant agreed to reimburse Great West for any medical benefits it paid out on her behalf if Defendant later recovered those expenses from a third party. (Compl. ¶9.) At some point, Defendant was injured by a third party. (Compl. ¶10.) In accordance with the Policy, Great West paid $153,648.10 for Defendant's medical expenses stemming from her injuries. (Compl. ¶10.) Defendant subsequently filed a personal injury claim against the third-party tortfeasor. (Compl. ¶¶10-11.) As part of her claim, Defendant sought reimbursement of the $153,648.10 in medical expenses she incurred and which Great West had paid. (Compl. ¶12.) Defendant eventually settled her personal injury claim against the third-party, and on June 17, 2008, recovered $500,000 in damages. (Compl. ¶11.) According to Plaintiff, after payment of her attorneys' fees and costs, Defendant received approximately $333,000 from the settlement - a portion of which represents the $153,648.10 in medical expenses Great West paid out under the Policy. (Compl. ¶13.)

At some point during this process, Great West assigned to Plaintiff its claims against Defendant under the Policy. (Compl. ¶1.) Plaintiff alleges that before Defendant settled her personal injury claim, it contacted Defendant and her counsel and asked that they keep Plaintiff apprised of the progress of her claim. (Compl. ¶14.) Neither Defendant nor her counsel responded to Plaintiff's requests. (Compl. ¶14.) Further, Plaintiff alleges that Defendant did not allow it or Great West to participate in the prosecution of the claim, including any mediation and settlement discussions held, and did not consult with Plaintiff or Great West prior to settling her claim. (Compl. ¶14.) Plaintiff also advised Defendant that it was asserting a lien on any proceeds Plaintiff received in settlement of her personal injury claim. (Compl. ¶28.) Despite settling her claim and receiving the settlement proceeds, Defendant has not reimbursed Plaintiff for the benefits Great West paid out under the Policy. (Compl. ¶15.)

As a result, in March 2009, Plaintiff filed the instant lawsuit against Defendant, wherein it seeks to recover the medical expenses Great West paid out under the Policy. (Compl. ¶15.) In its Complaint, Plaintiff asserts claims against Defendant for breach of contract and to enforce a

UNITED STATES DISTRICT COURT
For the Northern District of California

subrogation/right of recovery provision in the Policy. Plaintiff also seeks to foreclose upon its lien on the settlement proceeds Defendant received and/or a ruling that Defendant is holding the $153,648.10 in constructive trust for Plaintiff's benefit.

Plaintiff effected service of process on Defendant on May 18, 2009. (Dkt. #5.) On July 6, 2009, after Defendant failed to appear or file a responsive pleading, Plaintiff filed a Motion for Entry of Default. (Dkt. #6.) The Clerk of the Court entered Defendant's default the following day. (Dkt. #14.) Plaintiff thereafter filed the instant Motion for Default Judgment. On September 24, 2009, the undersigned held a hearing on the Motion. Defendant did not appear or file any response to the Motion.

### III. DISCUSSION

**A. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), following default by a defendant, a district court may enter default judgment in a case. It is well-settled that the district court's decision whether to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). To assist courts in determining whether default judgment in appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, the Court accepts all factual allegations within the complaint as true, except those allegations relating to the amount of damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Concurrently, Federal Rule of Civil Procedure 54(c) provides that, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a default judgment is granted, the scope of relief is limited to that requested in the plaintiff's complaint.

**B.     Jurisdiction**

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). As a preliminary matter, the undersigned will therefore assess whether the Court has subject matter jurisdiction over this action, whether personal jurisdiction exists over Defendant, and whether Plaintiff effected proper service of process on Defendant.

    1.    <u>Subject Matter Jurisdiction</u>

Plaintiff asserts that subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1332 and 29 U.S.C. § 1132(a)(3) and (e).

        *a.*    *Jurisdiction Under ERISA*

Section 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3), provides that a participant, beneficiary, or fiduciary may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

Whether jurisdiction exists therefore turns on whether Plaintiff, standing in Great West's shoes as the Policy's fiduciary, is seeking "appropriate equitable relief" under § 502(a)(3). The Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006), is controlling on this question. Faced with a nearly identical fact pattern, the Supreme Court held that where a plan fiduciary seeks to enforce a reimbursement provision in a policy by imposing a constructive trust or equitable lien on "specifically identifiable funds" that are "within the possession and control of the [defendant]," the action is equitable in nature and authorized under § 502(a)(3). *Id.* at 362.

Here, Plaintiff is seeking to enforce a subrogation/reimbursement provision in the Plan to recover the portion of medical benefits it paid out on Defendant's behalf from Defendant's settlement proceeds . Like the fiduciary in *Sereboff*, the relief Plaintiff seeks - namely, an equitable lien and/or constructive trust - are equitable in nature. Plaintiff has also identified a specific fund -

4

the settlement proceeds - apart from Defendant's general assets, and a specific share of that fund to which it claims it is entitled. Accordingly, under *Sereboffi*, Plaintiff's is seeking appropriate equitable relief in this action under § 502(a)(3).

### b. *Diversity Jurisdiction*

Alternatively, Plaintiff alleges that subject matter jurisdiction exists pursuant to § 1332. Under this statute, district courts may exercise subject matter jurisdiction over civil actions where the amount in controversy is greater than $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). In its Complaint, Plaintiff is seeking to recover $153,648.10 in medical benefit payments made on Defendant's behalf. (Compl. ¶¶ 15, 22, 23.) Accordingly, the amount in controversy component is satisfied. With respect to diversity of citizenship, Plaintiff avers that it is a Delaware corporation with its principal place of business in Illinois. (Supp. Br. at 3.) It alleges that Defendant is a resident of California. (Compl. ¶2.) Because Plaintiff and Defendant are citizens of different states, there is complete diversity of citizenship between the parties. Accordingly, the undersigned finds, that as an alternative basis, subject matter jurisdiction also exists under § 1332(a)(1).

### 2. Personal Jurisdiction

Next, the undersigned must assess whether Defendant is subject to personal jurisdiction in California. Here, at the time Plaintiff filed this action, Defendant resided in California. (Compl. ¶2.) Consequently, Defendant is subject to personal jurisdiction in this state. *See Milliken v. Meyer*, 311 U.S. 457, 462-63 (1940); *Burnham v. Superior Court*, 495 U.S. 604, 621 (1990); *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1142 (E.D. Cal. 2004).

### 3. Service of Process

Finally, the undersigned must evaluate whether Plaintiff properly served process upon Defendant. Under Federal Rule of Civil Procedure 4(e)(2), service of process may be effected by leaving a copy of the summons and complaint with a person of suitable age and discretion residing at the defendant's home. Here, the process server made numerous attempts over a period of six weeks to personally serve Defendant with the Summons and Complaint at her residence. (Dkt. #5 at

5

3.) The process server then personally served Defendant's co-occupant, 50-year-old Mr. Kaplan, at Defendant's residence on May 16, 2009. (Dkt. #5 at 2.) Because Mr. Kaplan resides at Defendant's residence and is of suitable age to be served, service of process was proper under Rule 4(e)(2).

**C.    Application of the *Eitel* Factors**

The undersigned next turns to application of the seven *Eitel* factors to determine whether entry of default judgment is appropriate in this matter.

1. <u>Prejudice to Plaintiffs</u>

Under the first *Eitel* factor, this Court examines whether Plaintiff will suffer prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471. Here, pursuant to the Policy, Defendant agreed to reimburse Great West for medical expenses if she recovered those same costs from a third-party tortfeasor. (Compl. ¶9.) Defendant breached this term by failing to reimburse ACS, as Great West's assignor, after she recovered her medical costs from the third-party tortfeasor. (Compl. ¶21.) As a result, Plaintiff suffered damages in the amount of the medical expenses that were paid out to Defendant. If the Court does not enter default judgment, Plaintiff will be unable to collect the sums due. Thus, denial of Plaintiff's request for entry of default judgment would substantially prejudice Plaintiff by preventing it from recovering against Defendant.

2. <u>Sufficiency of the Complaint and Likelihood of Success on the Merits</u>

The second and third *Eitel* factors address the sufficiency of Plaintiff's complaint and the probability of its success on the merits of its claims. *Eitel*, 782 F.2d at 1471. Accordingly, the undersigned turns Plaintiff's claims.

   *a.    Breach of Contract Claim*

Plaintiff's first claim against Defendant is for breach of contract.[1] In California, "[a] cause of

---

[1]In *Sereboff*, the Court noted that the fact Mid Atlantic had asserted a breach of contract claim did not transform the equitable nature of its action:
> [Mid Atlantic] alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identifiable fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief

6

action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Here, a contract, namely the Policy, exists between Defendant and ACS as Great West's assignor. Plaintiff's assignor performed its obligations by paying Defendant for medical expenses she incurred as a result of the third party's tortious acts or omissions. (Dkt. #15.) Defendant then breached the contract by settling her personal injury claim with the third-party tortfeasor, recovering compensation for her medical expenses, and then failing to reimburse Great West for the benefits she received, in direct contravention of the Policy's terms. Plaintiff, as the assignee of Great West, thus suffered damages in the amount of reimbursement that Defendant owes and has failed to pay. Therefore, Plaintiff has adequately demonstrated a substantial likelihood of success on the merits on its breach of contract claim.

### b. *Subrogation Claim*

In its second cause of action, Plaintiff seeks to enforce the Policy's Provision for Subrogation and Right of Recovery. (Romero Decl., Ex. A. at 37.) This provision provides in relevant part:

> Benefits may also be payable under the Plan in relation to the Illness. When this happens, Great-West may, at its option:
>
> • subrogate, that is, take over the Covered Person's right to receive payments from the Other Party. The Covered Person will transfer to Great-West any rights he or she may have to take legal action arising from the Illness to recover any sums paid under the Plan on behalf of the Covered Person;
>
> • recover from the Covered Person any benefits paid under the Plan from any payment the Covered Person is entitled to receive from the Other Party.

(*Id*.)

As alleged in Plaintiff's Complaint, Defendant has received a settlement payment from the third-party tortfeasor compensating her for her medical expenses that Great West paid. Defendant, however, has failed to transfer that portion of the settlement proceeds to Plaintiff in accordance with

---

is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise. *Sereboff*, 547 U.S. at 363.

the Policy. Plaintiff therefore seeks to have the Court specifically enforce the terms of the Subrogation and Right of Recovery provision. Based on the allegations set forth above, the undersigned finds that Plaintiff has demonstrated that it is entitled to relief under this claim. *See Sereboff*, 547 U.S. at 363.

### c.    *Foreclosure of Lien*

In its third cause of action, Plaintiff asserts that pursuant to the terms of the Policy, it has a lien against the settlement proceeds Defendant received in her personal injury action equal to $153,648.10, plus pre-judgment interest. Plaintiff now seeks to foreclose upon that lien.

Examining the Policy, the Claims & Legal Action section of the Policy provides in relevant part:

> Great-West will have a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the Covered Person receives or is entitled to receive from any of the sources listed above. The lien will not exceed:
>
> • the amount of benefits paid by Great-West for the Illness, plus the amount of all future benefits which may become payable under the Plan which result from the Illness. Great-West will have the right to offset or recover future benefits from the amount received from the Other Party; or
>
> • the amount recovered from the Other Party.

(Romero Decl., Ex A at 37.)

In *Sereboff*, the Supreme Court found that, in seeking to recover medical benefits paid out pursuant to the reimbursement provision in that policy, the fiduciary could rely on the rule of equity that permits it to " follow a portion of the recovery into the [beneficiaries'] hands as soon as [the settlement fund] was identified, and impose on that portion a constructive trust or equitable lien." *Sereboff*, 547 U.S. at 364 (quoting *Barnes v. Alexander*, 232 U.S. 117, 123 (1914) (internal quotations omitted). The same principles apply in this matter. Pursuant to the lien provision in the Policy and the equitable principle recognized in *Sereboff*, Plaintiff has a valid lien against the settlement proceeds Defendant received in the amount of $153,648.10. Because Defendant has failed to reimburse Plaintiff for the benefits paid out under the Policy, Plaintiff is entitled to

1 foreclose upon its lien against the settlement proceeds. Plaintiff has therefore demonstrated that it is
2 entitled to this relief.

### d. Plaintiff's Request for Imposition of a Constructive Trust

Finally, Plaintiff requests that the Court impose a constructive trust over the portion of the settlement proceeds awarded to Defendant as reimbursement for her medical expenses. As set forth above, in *Sereboff* the Supreme Court recognized this as an available equitable remedy to collect on benefits paid on a beneficiary's behalf for which the beneficiary has been compensated by a third-party tortfeasor. *Id.* Thus, Plaintiff has adequately demonstrated that it is entitled to impose a constructive trust on the portion of the settlement proceeds that represents the medical benefits Defendant incurred and which Great West paid.

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant. *Eitel*, 782 F.2d at 1471. In making this evaluation, the Court must take into account the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, No. C 97-2661, 1997 WL 797922, at *1 (N. D. Cal. Dec. 15, 1997).

Here, Plaintiff's itemized billing sheet indicates that Great West paid $153,648.10 for Defendant's medical expenses. (Dkt. #19, Ex. B.) Defendant then recovered compensation for those same medical expenses as a part of the settlement of her personal injury claim, but did not repay Plaintiff in accordance with the terms of the Policy. Plaintiff now seeks to collect this amount from Defendant's settlement proceeds. Thus, the damages Plaintiff seeks are proportionate to the harm Defendant caused, are justified under the Policy, and are properly documented. This factor therefore favors entry of default judgment against Defendant.

4. <u>Possibility of Dispute Concerning Material Facts</u>

The fifth *Eitel* factor examines the possibility of dispute as to any material facts of the case. *Eitel*, 782 F.2d at 1471-72. Here, Plaintiff has set forth adequate allegations detailing Defendant's failure to reimburse Plaintiff for medical expenses in violation of the Policy. Based on the undersigned's review of the record in this matter, there does not appear to be any issue that Defendant could dispute with respect to her obligation to reimburse Plaintiff for the medical expenses Great West paid under the Policy. Accordingly, the undersigned finds that this factor weighs in favor of entry of default judgment.

5. <u>Possibility of Excusable Negligence</u>

The six *Eitel* factor examines whether Defendant's failure to respond to Plaintiff's Complaint was the result of excusable neglect. *Id.* at 172. In this case, Defendant was properly served with the Summons and Complaint and had the opportunity to appear to defend against Plaintiff's claims and to oppose Plaintiff's request for entry of default judgment, but she failed to do so. There is nothing in the record indicating that Defendant's failure to appear and defend in this matter was the result of excusable neglect. Therefore, this factor weighs in favor of entry of default judgment.

6. <u>Policy for Deciding on the Merits</u>

The final *Eitel* factor examines whether the policy of deciding a case based on its merits precludes entry of default judgment. *Id.* In *Eitel*, the Ninth Circuit acknowledged that, the general rule is that default judgements are ordinarily disfavored and that courts should decide cases on their merits whenever possible. *Id.* However, courts have also recognized that the mere existence of Rule 55(b) indicates that the preference for a decision on the merits, standing alone, is not dispositive. *See, e.g., Bd. of Trustees of Auto. Indus. Welfare Fund v. Concord Car, Inc.*, No. C 95-4039, 1996 WL 382845, at *2 (N.D. Cal. July 1, 1996). When a party fails to defend against an action and delays a decision on the merits, as is the case here, then the preference does not preclude the Court from granting default judgment. *Id*. Because Defendant has failed to participate in this lawsuit by appearing and filing an Answer to Plaintiff's Complaint, a decision on the merits would be impracticable, if not impossible. *See id.* Thus, this factor weighs in favor of entry of default

judgment.

**D.    Prejudgment Interest**

Plaintiff has also requested an award of pre-judgment interest pursuant to California Civil Code section 3287(a) at the rate of 10% per annum. (Dkt. #34 at 1-2.) However, Plaintiff has failed to adequately explain why California law, as opposed to 28 U.S.C. § 1961(a), provides the applicable rate for pre-judgment interest in this matter. Accordingly, the undersigned finds that an award of prejudgment interest at the rate prescribed by 28 U.S.C. § 1961(a) is appropriate.

## IV. CONCLUSION

Based on the foregoing analysis, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Default Judgment (Dkt. #19) in the amount of $153,648.10 plus pre-judgment interest at the rate prescribed by 28 U.S.C. § 1961(a).

Pursuant to Federal Rule of Civil Procedure 72, any party may serve and file objections to this Report and Recommendation within 10 days after being served.

**IT IS SO RECOMMENDED.**

Dated: December 17, 2009

_____
Maria-Elena James
Chief United States Magistrate Judge

11